JAMES ALLEN BOWERS,                          )
                                             )
     *Petitioner,*                      )
                                             )
v.                                           )          No. 1:05-CV-241
                                             )          *Chief Judge Curtis L. Collier*
JIM WORTHINGTON, Warden.                     )
                                             )
     *Respondent.*                      )

## M E M O R A N D U M

James Allen Bowers ("Bowers" or "Petitioner") has filed a petition for *writ of habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury of one count of rape of a child in 1997. He now seeks review of that conviction. Petitioner raises thirteen issues focusing primarily on ineffective assistance of trial and appellate counsel. Respondent has filed a motion to dismiss and/or for judgment as a matter of law (Court File No. 4). After reviewing the record and applicable law, the Court concludes the § 2254 petition is without merit, and it will be **DISMISSED**.

### I.    STANDARD OF REVIEW

Petitioner may obtain habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States Districts Courts, the Court is to determine, after a review of the response, the transcript, record of state court proceedings, and the expanded record, whether an evidentiary hearing is required. If a hearing is not required, the district judge is to dispose of the case as justice dictates. The Court finds it is unnecessary to hold an evidentiary hearing in the present case.

The decision of the state courts is reviewed by this Court under 28 U.S.C. § 2254(d), which

is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute delimits the scope of a federal district court's jurisdiction to review habeas claims. In particular, a court considering a habeas claim must defer to any decision by a state court concerning claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Credibility findings made by state courts are entitled to the presumption of correctness. *McQueen v. Scroggy,* 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257(1997), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004); *Smith v. Jago,* 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990).

## II.  **PROCEDURAL HISTORY**

The record reflects Petitioner was convicted on April 18, 1997, on one count of child rape. Petitioner received a twenty-one year sentence on that conviction. This sentence was modified in August of 1997 to eighteen years. *See State v. Bowers*, 77 S.W.3d 776, 779 (Tenn.Crim.App. 2001). Petitioner filed a motion for new trial in July of 1999 claiming he should be granted a new trial because, subsequent to the trial, the victim wrote his mother a letter stating "nothing happened." The trial court denied the motion on July 19, 1999. *See id*. On August 30, 2001, the Court of Criminal Appeals affirmed defendant's conviction, and the Tennessee Supreme Court denied his application for permission to appeal on February 11, 2002. *State v. Bowers*, 77 S.W.3d 776 (Tenn.Crim.App. 2001).

Petitioner filed a state post-conviction petition and after he was appointed counsel, a hearing

was held on September 11, 2003.  The trial court denied post-conviction relief on January 13, 2004.

On appeal, Petitioner only raised four of the thirteen complaints he raised at the trial level.  The post-

conviction appellate court affirmed the trial court's denial of post-conviction relief.  *Bowers v. State*,

2005 WL 1021563 (Tenn.Crim.App. May 2, 2005)*.*  Petitioner's application for permission to appeal

was denied by the Supreme Court on August 29, 2005.  The instant habeas petition was filed on

September 6, 2005.

III.    **FACTUAL BACKGROUND**

The facts as to the conviction for child rape which is before this Court are taken from the

appellate court's opinion affirming the conviction:

> At trial, the State presented the testimony of three witnesses.  These witnesses were the victim, A.S.; Jennifer Newby (formerly Bowers), the estranged wife of the Defendant; and James Newby, Jennifer Newby's father.
>
> A.S. testified that when the offense occurred, she was an eleven-year-old sixth-grade student.  At the time, her mother's friend, Sharon, was dating the Defendant.  A.S. testified that she once spent the night with the Defendant, the Defendant's girlfriend and the Defendant's three-year-old daughter by a previous marriage.  A.S. put the infant daughter to bed for the evening and began watching television on the living room couch.  She testified that the Defendant came into the living room, turned on the radio, and began slow-dancing with her.  The Defendant was wearing only a pair of shorts, and A.S. noticed that he had an erection as they danced.  The Defendant undressed A.S. and engaged in sexual intercourse with her on a blanket on the floor.
>
> Although A.S. initially told no one about the incident with the Defendant, she eventually told a school friend, who then told a teacher, who in turn told a Tennessee Bureau of Investigation (T.B.I.) agent.  The T.B.I. agent proposed  A.S. telephone the Defendant and record their conversations, during which A.S. would attempt to obtain an admission from the Defendant regarding his sexual activity with A.S.
>
> Three recordings of conversations between A.S. and the Defendant were introduced as evidence at trial and played for the jury.  The first recording occurred in February 1995, and although no specific admission was made by the Defendant during the

conversation, the jury heard the Defendant's tone of voice and concern that "the law" could be listening. Two more taped conversations occurred in August 1995, during which the Defendant discussed explicit sexual matters with A.S. Both of the conversations that were taped in August contained statements by the Defendant that could reasonably be construed by a jury to be admissions that he had engaged in sexual intercourse with A.S. at some prior time.

The next witness for the State was Jennifer Newby, the estranged wife of the Defendant. The majority of Jennifer Newby's testimony pertained to two recorded conversations that Jennifer Newby had with the victim, A.S. In the first of these conversations, which occurred in March 1996, A.S. denied that the Defendant had raped her. In the second conversation, which occurred in August 1996, A.S. confirmed that she had had no "sexual contact" with the Defendant. Both conversations were recorded near A.S.'s school, because of Jennifer Newby's concern that any contact between Jennifer Newby and A.S. would be met with disapproval by A.S.'s mother. The tape recordings of both of these conversations were admitted into evidence, and the jury listened to them during the trial.

Jennifer Newby and A.S. both testified that the conversations recorded in March and August of 1996 were staged and A.S. did not tell the truth during either of the two conversations. Jennifer Newby and A.S. testified that they discussed what A.S. should say before the taping began, and A.S. testified that she cooperated in these two taped conversations because she was afraid of the Defendant. Jennifer Newby also testified that she assisted in these staged tape-recorded conversations because she was afraid of the Defendant.

At trial, Jennifer Newby testified that she was nineteen years old, pregnant and unemployed. She testified that she had filed for a divorce from the Defendant in September 1996 but that they later reconciled. However, she testified that she filed for divorce again on December 2, 1996. The Defendant filed a complaint for divorce against Jennifer Newby on December 27, 1996, in which he disputed the paternity of Jennifer Newby's unborn child. Jennifer Newby testified that she had told the Defendant she was going to play "hard ball" upon learning that the Defendant disputed paternity of her unborn child.

The final witness for the State was James Newby, Jennifer's father. Newby testified he had heard the Defendant admit to and brag about having sex with A.S. He also stated the Defendant claimed he would never be caught because he was smarter than the law enforcement authorities.

Additional evidence was presented as part of the State's case in the form of a stipulation A.S. was examined by a doctor on February 17, 1995, approximately three months after the offense. At the time of the examination, A.S. was eleven years old. The doctor who examined A.S. determined that A.S.'s hymen was not intact.

4

The defense proof consisted of testimony by the Defendant and four witnesses. The Defendant's friend, Greg Buckner, testified that he was present with the Defendant when each of the three recorded conversations between the Defendant and A.S. occurred. Buckner confirmed that the Defendant was abusing drugs and would become hyperactive and vulgar when under the influence of "crank." Buckner believed that the Defendant was clowning around and playing to a crowd of people who were also present when he was having the three recorded conversations with the victim. The other three defense witnesses, Randy Deakins, Delanie Deakins and Wanda Deakins, were acquaintances of Jennifer Newby. They all testified to the effect that Jennifer Newby was excited and happy to have obtained the tape-recorded conversations of A.S. in which A.S. purportedly denied that the rape or sexual contact had occurred.

The Defendant testified that he had never engaged in sexual intercourse or sexual relations with A.S. He testified that he did not meet A.S. until just before Christmas 1994, after the time frame in which the alleged rape happened. According to the Defendant, he was high on "crank" during the tape-recorded conversations with A.S. He testified that being under the influence of "crank" made him hyperactive and more likely to use vulgar language that is heard on the tape recordings. He stated that the other individuals were present during these conversations listening to his end of the conversation, and he maintained that much of the time he was simply putting on a show for these individuals. He also testified that he believed that the conversations were in fact being recorded.

*State v. Bowers*, 77 S.W.3d 776, 779-81 (Tenn.Crim.App. 2001), *perm. app. denied* (Feb. 11, 2002).

## IV.    ANALYSIS

Respondent claims nine of the thirteen claims presented by Petitioner have been procedurally defaulted because they were not raised in previous state court proceedings. For ease of discussion, the Court has renumbered the claims and divided the claims into two groups: (A) procedurally defaulted claims and (B) claims adjudicated in State court on the merits. The Court will first address the procedurally defaulted claims.

### A.    *Procedurally Defaulted Claims*

A state prisoner must exhaust available state remedies before requesting relief under 28 U.S.C. § 2254(b). *See Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Rose v. Lundy*, 455 U.S.

509, 519 (1982); Rule 4 Rules Governing Section 2254 Cases in the United States District Courts. A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. *Preiser v. Rodriguez*, 411 U.S. 475, 477, 489-90 (1973). When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).

Before a petitioner can present a claim in a petition for writ of *habeas corpus*, he must first have presented that claim in "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Under Tennessee's appellate review process, a defendant has a right to have his claims on appeal initially heard by the Appellate Court of Tennessee. After a defendant's claims have been decided in the Appellate Court of Tennessee, a defendant may file a petition requesting permission to appeal to the Supreme Court of Tennessee. (Death Penalty appeals automatically proceed directly to the Tennessee Supreme Court for review). Failure by a defendant to present a claim in his appeal to the appellate court will result in a procedural default of that claim if it is later raised in a petitioner's petition for writ of *habeas corpus*. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002), *cert. denied*, 540 U.S. 839 (2003). The procedural default rule announced in *Boerckel* that addressed a petitioner's failure to pursue a claim on direct appeal applies with equal force in cases where a petitioner fails to pursue a claim on appeal in a post-conviction petition on collateral review. *See White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999), *cert. denied*, 528 U.S. 1127 (2000). However, as explained below, a federal court can review procedurally defaulted claims if a petitioner shows cause for failure to raise the claim and actual prejudice which resulted from such failure, or that refusal to review the claim would result in a

fundamental miscarriage of justice.

When a petitioner presents claims to the state courts as a matter of federal law, the state court must address the merits of those claims. *Coleman v. Thompson*, 501 U.S. at 734-35. If the state court decides those claims on an adequate and independent state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the Petitioner is barred by this procedural default from seeking federal habeas review, unless he can show cause and prejudice for default. *See Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).

A petitioner confronted with procedural default must show cause and prejudice for the default in order to obtain federal review of his claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Wainwright v. Sykes*, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. *Coleman*, 501 U.S. at 752-53; *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Petitioner must show "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (*quoting Murray*, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show it is more likely than not no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.

This Court will address each procedurally defaulted claim individually below and identify, in parenthesis, the letter and number of Petitioner's claim as he identified it in his petition.

### 1. <u>Failure to Change Venue (Petition at ¶ C. Ground 3)</u>

Petitioner's first procedurally defaulted claim is identified in paragraph C as the third ground in his habeas petition. Although Petitioner's venue claim is somewhat confusingly plead, presumably he is claiming trial counsel was ineffective for failing to request a change of venue and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to request a change of venue. According to Petitioner, trial counsel should have requested a change of venue after a prospective juror referred to his jury service on Petitioner's previous criminal case. This claim is procedurally defaulted as Petitioner failed to present this ineffective assistance of counsel claim to the state courts.

On direct appeal Petitioner, relying upon a state case, *i.e.*, *State v. Scruggs*, 589 S.W.2d 899 (Tenn. 1979), claimed the trial court committed an error when it failed to declare a mistrial due to the prospective juror's comments. The trial error claim on direct appeal is different than the ineffective assistance of counsel claim Petitioner presents in the instant habeas petition.

Although Petitioner raised the issue of counsel's failure to request a change of venue after the prospective juror's comment in his state post-conviction petition,[1] this claim is procedurally barred from habeas review because Petitioner failed to raise this claim on appeal to the Tennessee Court of Criminal Appeals after his post-conviction petition was denied by the state trial court.[2]

---

[1] Trial counsel testified he had several discussions with Petitioner and his family regarding whether to request a change of venue. Counsel concluded such a request would be groundless since Pikeville only had one weekly newspaper and since the crime had occurred almost three years prior to the trial. Based on counsel's previous trial experience, he believed the Bowers' Funeral Home Business and their reputation in the community would be beneficial to Petitioner. Counsel also testified most of the jurors had neither read nor heard about the crime (Court File No. 6-4, Addendum No. 2, Vol. 2, pp. 75-77).

[2] Petitioner's present counsel, Douglas A. Trant, also represented him during his state post-conviction hearings and appeal.

Absent a showing of cause and prejudice or a fundamental miscarriage of justice, Petitioner' has procedurally defaulted this claim. *See Coleman*, 501 U.S. at 750. Thus, this claim is subject to dismissal without further consideration.

Accordingly, Petitioner's claim counsel was ineffective for failing to request a change in venue is procedurally barred. Therefore, the Court will **DISMISS** this issue and the Court will **GRANT** Respondent's motion to dismiss this issue.

### 2.     <u>Void Amended Judgment (Petition at ¶ E. Ground 5)</u>

Petitioner asserts, in his second defaulted claim which is identified as ground five in his petition, his trial actually occurred in Bledsoe County rather than in Rhea County, as reflected in his amended judgment. Petitioner asserts this error renders his judgment void. Petitioner raised this issue during his state post-conviction proceedings and the trial court concluded it was a clerical error which was corrected at the post-conviction hearing by entry of an amended judgment and there was no merit to the claim. Nevertheless, Petitioner failed to raise this claim in his appeal to the Tennessee Court of Criminal Appeals when he appealed the trial court's denial of his state post-conviction petition. Consequently, this claim is procedurally barred from habeas review and Petitioner has failed to show cause and prejudice or demonstrate a fundamental miscarriage of justice will result if the Court fails to consider the claim.

Accordingly, Petitioner's claim his amended judgment is void is procedurally barred and will be **DISMISSED.** Thus, Respondent's motion to dismiss the claim the amended judgment is void will be **GRANTED**.

### 3. <u>Sexual Dysfunction (Petition at ¶ F. Ground 6)</u>

Petitioner's third procedurally defaulted claim asserts counsel was ineffective for failing to investigate and present evidence Petitioner was rendered sexually dysfunctional at the time of the alleged incident and was physically unable to perform the act of child rape because he was under the influence of cocaine, methamphetamine, and alcohol.[3]

The state post-conviction court found this issue to be totally without merit as there was no proof presented either at trial or post-trial which would suggest Petitioner was sexually dysfunctional. Nevertheless, the failure of Petitioner's state post-conviction counsel to raise this claim when he appealed the state court's denial of post-conviction relief has resulted in the procedural default of this claim. Accordingly, Respondent's motion to dismiss as to his sexual dysfunction claim is **GRANTED**.

### 4. <u>Proof of Small Penis (Petition at ¶ G. Ground 7)</u>

Petitioner has procedurally defaulted his ineffective assistance of trial counsel claim wherein he contends trial counsel failed to produce proof of his small penis. According to Petitioner, such proof would have demonstrated he was joking and under the influence of drugs when he stated he had a large penis.

Petitioner raised this claim in his state post-conviction petition. The state post-conviction court concluded such proof, in all likelihood, would not have been allowed had it been offered. Additionally, the court concluded trial counsel made a strategic decision to discard this tactic as

---

[3]    Trial counsel testified Petitioner neither told him nor testified he (Petitioner) was sexually dysfunctional. In addition, the pre-sentence report reflected Petitioner "denied having an alcohol problem and stated he was not an alcoholic." (Court File No. 6-5, Addendum No. 2, Vol. 3, pp. 79-80).

being not in Petitioner's best interest. Because Petitioner's state post-conviction counsel failed to raise this issue when he appealed the denial of Petitioner's post-conviction petition, it is procedurally defaulted. Absent any proof of cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default, the claim will be **DISMISSED**. Respondent's motion to dismiss as to the claim relating to the size of Petitioner's penis will be **GRANTED**.

### 5. Extortion Letter (Petition at ¶H. Ground 8)

Petitioner is also barred from seeking habeas review of his claim that an extortion letter should have been introduced by trial and appellate counsel.[4] Petitioner raised this claim during his state post-conviction proceedings but he failed to raised it when he appealed the state court's denial of his post-conviction petition. Consequently, counsel's failure to raise this claim on appeal during Petitioner's state post-conviction proceedings has resulted in Petitioner's procedural default of this claim.

Absent circumstances to excuse the default, this procedurally defaulted claim will be **DISMISSED** and Respondent's motion to dismiss Petitioner's extortion letter claim will be **GRANTED**.

### 6. Prosecutorial Misconduct (Petition at ¶ I. Ground 9)

Petitioner is also procedurally barred from raising his claim that the prosecutor engaged in misconduct by making improper references to Petitioner's investigator thus denying him due process of law. Petitioner claims the prosecutor engaged in misconduct when he commented Petitioner had

---

[4] Contrary to Petitioner's contention, he did not attached a copy of the extortion letter to his complaint.

a former Tennessee Bureau of Investigation ("TBI") agent seated at his table to give him credibility. Once again, counsel's failure to raise this claim when he appealed the denial of Petitioner's state post-conviction petition has resulted in this claim being procedurally defaulted.

Accordingly, Petitioner's claim of prosecutorial misconduct is procedurally defaulted and barred from consideration in this habeas proceeding. Respondent's motion to dismiss as to Petitioner's prosecutorial misconduct claim will be **GRANTED**.

### 7. Phone number change (Petition at ¶ J. Ground 10)

Petitioner asserts an ineffective assistance of counsel claim on the basis trial counsel failed to ask him, on re-direct, why he did not change his phone number. Although this claim was raised in Petitioner's state post-conviction petition, it was not raised on appeal. The state post-conviction court concluded the "point attempted to be advanced by post-conviction counsel was in fact testified to on page 577 of the trial transcript at line 13 when the Defendant stated he had to have the funeral home extension at his home. This issue is without merit." (Court File No. 6-7, at 6).

However, the failure of Petitioner's attorney to raise this claim on appeal when he sought review of the denial of Petitioner's state post-conviction petition in the Tennessee Criminal Appeals Court procedurally bars this federal habeas Court from reviewing the issue. This claim was not presented to the appellate court and Petitioner's unexcused procedural default of this claim bars habeas review. Accordingly, Respondent's motion to dismiss Petitioner's claim that trial counsel was ineffective for failing to ask Petitioner why he did not change his telephone number will be **GRANTED**.

### 8. Failure to attack Agent Emiren (Petition at ¶ K. Ground 11)

Petitioner has identified another specific error which he claims resulted in counsel's

representation falling below a reasonable standard of practice and ultimately resulting in prejudice to him. Petitioner contends trial and appellate counsel were ineffective for failing to attack Agent Emiren for bias. Petitioner contends trial counsel should have presented evidence of the financial interest which Agent Emiren's mother and father-in-law had in obtaining valuable property from "the Bowers." (Court File No. 1, at 9). This claim is confusingly plead and since it is procedurally defaulted the Court will not attempt to decipher the claim.

A similar claim was raised in Petitioner's state post-conviction petition. The state post-conviction court, finding trial counsel made a strategic trial decision not to call Agent Emiren as a witness, found this claim to be without merit and denied Petitioner relief on this claim. Petitioner's counsel failed to seek available discretionary state appeal review from the denial of his state post-conviction petition, thus, this claim is procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Counsel's failure to raise this claim when he appealed the denial of Petitioner's state post-conviction petition resulted in procedural default, and Petitioner's failure to establish cause and prejudice or a miscarriage of justice to excuse his procedural default results in this claim being **DISMISSED**.

Accordingly, the Court will **GRANT** Respondent's motion to dismiss Petitioner's ineffective assistance for failing to attack Agent Emiren for bias.

9. <u>**Failure to Impeach Witness (Petition at ¶ L. Ground 12)**</u>

Petitioner presents another procedurally-barred claim relating to counsel's performance. Specifically, Petitioner contends trial and appellate counsel were ineffective for failing to impeach Jennifer Newby's (Bowers)[5] testimony during trial and the motion for new trial with the fact that she

---

[5]  Jennifer Newby was Petitioner's wife at the time of trial.

never filed a divorce complaint.

On direct appeal Petitioner raised this claim as a trial court error. Specifically, Petitioner claimed the trial court erred when it permitted the State to introduce into evidence a divorce complaint containing prejudicial and improper statements about Petitioner. Although there was testimony the divorce complaint had been properly filed, it in fact, had never been filed. Petitioner argued that because the prejudicial and improper statements were improperly considered by the jury when rendering its verdict, he was entitled to a new trial.

The state appellate court did not address, on direct appeal, the ineffective-assistance claim before this habeas court because Petitioner did not raise this issue on direct appeal, but rather he raised it as a trial-court-error claim. Although Petitioner included some of the facts supporting this claim in his direct appeal to support his trial court error claim, he never raised the precise ineffective- assistance-of-counsel claim on direct appeal.[6] To exhaust this claim, Petitioner was required to have presented the very issue on which he seeks relief from this federal Court to the courts of the state he claims is wrongfully confining him. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Petitioner's claim that counsel was ineffective for failing to impeach Jennifer Newby's trial testimony regarding her divorce papers being properly filed is not substantially equivalent to his state court claim that the trial court erred by failing to grant Petitioner a new trial based upon the divorce papers not being properly filed because Petitioner failed to present, in state court, "both the legal theory and the facts on which [his] federal claim rests." *Lott v. Coyle*, 261 F.3d 594, 618-19

---

[6]     Both issues challenge the jury's consideration of evidence contained in a divorce complaint that had not been filed.

(6th Cir. 2001), *cert. denied*, 534 U.S. 1147 (2002).

Although, Petitioner raised this claim as an ineffective-assistance-of-counsel claim in his state post-conviction petition, he failed to raise this claim when he appealed the state court's denial of his state post-conviction petition (Addendum No. 4). Thus, Petitioner has procedurally defaulted this claim and habeas review of this claim is barred absent proof of cause for the default and actual prejudice or proof that failure to consider this claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Accordingly, Petitioner's claim is procedurally barred in the federal courts. The Court will **GRANT** Respondent's motion to dismiss Petitioner's claim that counsel was ineffective for failing to impeach Jennifer Newby's (Bowers) testimony.

Having disposed of the claims which are barred from federal review due to Petitioner's failure to exhaust his state remedies, the Court will now address the claims which were adjudicated on the merits in state court.

**B.**     ***Claims Adjudicated in State Court***

Generally, four of the thirteen claims Petitioner raises in this habeas petition were adjudicated in state court. Although Petitioner has intertwined some procedurally-barred claims with the four

exhausted claims, this Court will address only those portions of the four claims which were properly exhausted.

**1.**     <u>**Ineffective Assistance of Counsel**</u>

Petitioner raises four claims of ineffective assistance of counsel which are ripe for federal

habeas review.[7]  Prior to analyzing each claim, the Court will first discuss the United States Supreme Court law applicable to Petitioner's ineffective assistance of counsel claims.

Federal courts must defer to state court factual findings, according them a presumption of correctness that the petitioner may rebut only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption only applies to underlying basic, primary, or historical facts, and not to mixed questions of facts and law.  *Rickman v. Bell,* 131 F.3d 1150, 1153 (6th Cir. 1997), *cert. denied,* 523 U.S. 1133 (1998); *West v. Seabold,* 73 F.3d 81, 84 (6th Cir.), *cert. denied,* 518 U.S. 1027 (1996).  Ineffective assistance of counsel in a petition for habeas corpus review presents a mixed question of law and fact.  *West v. Seabold,* 73 F.3d at 84.  Therefore, a state court's conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(e)(1).

Ineffectiveness is a mixed question of law and fact, not a question of basic, primary, or historical fact.  State court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of 28 U.S.C. § 2254(e).  However, the performance and prejudice components of the ineffectiveness inquiry, which are mixed questions of law and fact, are not entitled to the deference.  *See Rickman,* 131 F.3d at 1153-54.  To obtain relief, Petitioner must show the state court's adjudication resulted in a decision that involved an unreasonable application of clearly established Federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *see also, Barnes v. Elo,* 339 F.3d 496, 501 (6th Cir. 2003), *cert. denied*, 540 U.S. 1164 (2004) (stating a claim of ineffective assistance of counsel presents a mixed question of fact and law,

---

[7]          Petitioner includes alternate theories of relief in two of the four claims of ineffective assistance of counsel.

thus, requiring the application of the "unreasonable application" prong of § 2254(d)(1)). The Sixth Circuit observed "a federal court may not grant a writ of habeas corpus 'simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable.'" (*quoting Williams v. Taylor*, 529 U.S. 362, 411 (2000)).

The Sixth Amendment provides a criminal defendant with the right to effective assistance of counsel. The Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish his attorney was not performing within the range of competence demanded of attorneys in criminal cases, a defendant must demonstrate the attorney's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88; *McMann v. Richardson,* 397 U.S. 759, 771 (1970). The *Strickland* test requires a defendant to demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* counsel was not functioning as counsel guaranteed to the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, *i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *McQueen v. Scroggy,* 99 F.3d at 1310-11; *Sims v. Livesay,* 970 F.2d 1575, 1579-81 (6th Cir. 1992). S*ee also Flippins v. United States,* 808 F.2d 16, 17-18 (6th Cir.), *cert. denied,* 481 U.S. 1056 (1987). As the Sixth Circuit explained in *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied,* 508 U.S. 975 (1993): "Counsel is constitutionally ineffective

only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold,* 73 F.3d 81, 84 (1996). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West,* 73 F.3d at 84, *quoting Strickland,* 466 at 691, *citing Smith v. Jago,* 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990). There is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims,* 970 F.2d at 1579-80.

"Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell,* 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied,* 523 U.S. 1079 (1998), *citing, Strickland,* 477 U.S. at 687; *United States v. Cronic,* 466 U.S. 648, 658, (1984); *McQueen v. Scroggy,* 99 F.3d at 1310-11. The Court cannot indulge in hindsight, but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland,* 466 U.S. at 690; *McQueen,* 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen,* 99 F.3d at 1311; *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen,* 99 F.3d at 1311; *O'Hara,* 24 F.3d at 828. Effective assistance of counsel is presumed, and the Court will not generally question matters involving trial strategy. *See United States v. Chambers,* 944 F.2d 1253, 1272 (6th Cir. 1991), *cert. denied,* 502 U.S. 1112 (1992).

To establish the prejudice prong, Petitioner must show that absent his attorney's errors, there is a reasonable probability the result of his trial would have been different. *Lynott v. Story,* 929 F.2d 228, 232 (6th Cir. 1991). "[R]eviewing court[s] must remember 'counsel is strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *quoting Strickland v. Washington,* 466 U.S. at 690. The Court must make an independent judicial evaluation of counsel's performance, and determine whether counsel acted reasonably under all the circumstances. *McQueen,* 99 F.3d at 1311; *O'Hara,* 24 F.3d at 828; *Ward v. United States,* 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims,* 970 F.2d at 1580-81.

The Court now turns to Petitioner's claims which were adjudicated in State court and are properly before this Court. The Court declines to address any procedurally barred claim that Petitioner has attempted to intertwine with claims adjudicated by the state appellate court on the merits. The Court will discuss each claim separately.

### a. Counsel Erroneously Stipulated to Dr. James Nelson's Testimony (Petition at ¶A. Ground 1)

Although counsel has attempted to intertwine several claims of ineffective assistance of counsel into this one claim, the Court will not address those portions of the claim Petitioner failed to seek available discretionary state appeal review and which are in fact, procedurally defaulted. Therefore, the Court will only address the portion of the claim which Petitioner raised on appeal in state court.

Petitioner raised this claim, to some extent, in his appeal of his denial of his state post-conviction petition. The portion of this claim which was raised in the state appellate court and which is properly before this Court is taken from Petitioner's state post-conviction appellate brief:

> Within the file of the District Attorney General and trial counsel and appellate counsel was a doctor's report from Dr. James Nelson indicating the alleged victim in this case had previously been raped. Trial counsel was ineffective for not using this evidence and for agreeing to stipulate to the testimony of Dr. James Nelson in spite of this evidence the hymen of the alleged victim was not intact before she ever

knew the Petitioner.

(Addendum No. 4, at 13; Court File No. 6-8).  In state court and in this habeas petition, Petitioner asserts trial and appellate counsel were ineffective for failing to use a report given to the defense prior to trial indicating the alleged victim had previously been raped.  Petitioner argues the prejudicial effect was greater because trial counsel stipulated the doctor's testimony would be that the hymen was not intact and the only implication the jury could draw from the stipulation was the alleged victim was a virgin prior to the alleged rape by Petitioner.

The victim had previously made allegations of sexual abuse against Jimmy Miller.[8]  As a result of those allegations, Dr. James Nelson examined the victim and his report reflects  the victim suffered "abrasions to her neck and bite marks to her nipples, and states that the '[i]ntroitus is large for age, suggesting but not proving penetration." *Bowers v. State*, 2005 WL 1021563, at *6 (Tenn.Crim.App. 2005).  The victim was subjected to another medical examination two years after the initial exam and the report reflected her genitalia was "normal."  *Id*.  Two years after the second examination the victim was examined again, as a result of the victim's allegations against Petitioner, and this exam revealed the victim's hymen was no longer intact.

The state appellate court reviewed Petitioner's claim and upheld the post-conviction court's finding that the decision to enter into the stipulation was a reasonable trial strategy.   In reviewing Petitioner's claim that counsel was ineffective for stipulating the victim's hymen was not intact rather than requiring the State to introduce the medical reports into evidence, the Court is mindful

---

[8]     Petitioner presented Jimmy Miller as a witness in his state post-conviction hearing. Although Miller, the victim's uncle, testified he had pleaded guilty to the aggravated sexual battery of the victim in 1991, he testified, on direct, that he did not rape the victim in and on cross-examination confirmed he did not penetrate her in any fashion.  (Court File No. 6-3, at 29, Addendum No. 2, Vol. 1, pg. 29).

that a claim of ineffective assistance of counsel "cannot be based on a decision relating to a reasoned choice of trial strategy, even when proved improvident." *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985), *cert. denied*, 474 U.S. 922 (1985). During the state post-conviction proceedings trial counsel testified he chose to enter into a stipulation that the victim's hymen was not intact in an effort to minimize the effect of the presentation of the medical testimony directly to the jury. Trial counsel explained , in his opinion "the medical evidence of the 1991 examination might have caused the jury to be more sympathetic to the victim particularly because the 1991 medical record did not contain definitive proof of previous penetration." *Bowers v. State*, 2005 WL 1021563, at *6. In the instant case, although in hindsight counsel's decision to stipulate to the evidence may seem unwise, trial counsel made a reasoned decision. Given that the police report did not show the victim was penetrated during the first incident of abuse; the first perpetrator testified he did not penetrate the victim; counsel's explanation that the 1991 report did not conclusively state the victim's hymen had been torn;[9] the subsequent examination established the victim's genitalia was normal; and counsel's decision to enter into the stipulation was for the strategic purpose to minimize the impact of live medical evidence, the decision to enter into the stipulation did not rise to the level of constitutionally deficient performance.

Pursuant to AEDPA, a writ of *habeas corpus* cannot be granted with respect to any claim adjudicated on the merits in state court unless the adjudication was contrary to or involved an unreasonable application of clearly established federal law or involved an unreasonable

---

[9] The report stated the hymen was abnormal, the "introitus" was eight millimeters times one centimeter, and there was no acute trauma. In addition, the report noted the introitus was large for the victim's age, suggesting but not proving penetration (Court File No. 6-4, Addendum No. 2, Vol 2, p. 52-53).

determination of the facts. Given trial counsel's explanation of why he entered into the stipulation and given the evidence before this Court, the state court's determination regarding counsel's performance in stipulating the victim's hymen was not intact did not involve an unreasonable determination of the facts in light of the state court evidence and was neither contrary to nor based on an unreasonable application of Supreme Court law. Accordingly, Petitioner has failed to establish counsel was ineffective for stipulating the victim's hymen was not intact. Thus, the Court will **DISMISS** this claim on the merits and will **GRANT** Respondent's motion to dismiss this claim.

### b. Counsel Failed to Investigate or Cross-Examine Jimmy Newby (Petition at ¶ B. Ground 2)

Once again Petitioner has attempted to intertwine procedurally defaulted claims with a claim properly before this habeas Court. To the extent Petitioner's counsel failed to seek available discretionary state appeal review of this claim from the denial of his state post-conviction petition the claim is procedurally defaulted and the Court will not consider the procedurally-barred portion of the claim. Therefore, the Court will only address the portion of the claim which Petitioner raised on appeal in state court.

Petitioner raised the following claim when he appealed the state court's denial of his post-conviction petition:

> Trial and appellate counsel were ineffective for not properly investigating the prior record and prior bad acts of Jimmy Newby. Failure to do so is extremely prejudicial because Jimmy Newby's testimony is the only corroborating evidence of the allegations of the alleged victim. The prejudice is extreme from the testimony of Mr.Newby and impeachment of his testimony even more crucial [sic]. Instead of trying to impeach Mr. Newby on reaching a deal with the District Attorney General's office over the retiring of his theft case (which simply did not occur) he should have been impeached on the details of the theft case as a prior bad act.

(Court File No. 6-8, at 14).

The state post-conviction court, observing Mr. Newby was not the only source of corroboration, concluded the recorded tapes of Petitioner[10] and Petitioner's own testimony and inappropriate demeanor while testifying at trial served as powerful circumstantial evidence of his guilt. The court further concluded "Mr. Newby's own credibility, his demeanor and testimony revealed a person who had a bias, who had used drugs, who was combative, and his testimony was equivocal. In short, Mr. Newby's credibility was strongly attacked and at issue. Any lack of further attack on his credibility, if it was failure at all, certainly did not undermine the reliability of the ultimate verdict in this case. This argument fails on both prongs of Strickland." (Court File No. 6-7, at 3).[11]

First, the appellate court observed Petitioner waived this issue by failing to support it with argument or citation to authorities.[12] Nevertheless, the appellate court addressed this issue observing trial counsel testified he was aware of Newby's prior record of misdemeanor convictions but in his opinion, he would not have been permitted to ask Newby about them at trial. Furthermore, trial counsel testified he cross-examined Newby about a felony theft charge that had been dismissed by the state after he agreed to be a witness against the Petitioner. *Bowers v. State*, 2005 WL

---

[10]    Trial counsel testified that, in his opinion, the tapes of Petitioner speaking with the victim were the most "crucial part of this case." (Court File No. 6-4, Addendum No. 2, Vol. 2, p.70).

[11]    Petitioner has not rebutted the State court's factual findings with clear and convincing evidence, thus, such findings are presumed correct. 28 U.S.C. § 2254(e)(1). Additionally, Petitioner has not presented any evidence to undermine the state court credibility findings.

[12]    Petitioner's claim in the state appellate court was not factually supported. Although Petitioner's claim in this habeas proceeding includes numerous factual submissions, the Court is only permitted to consider the claim to the extent is was exhausted in state court.

1021563, at *8.[13]   The appellate court concluded Petitioner was not entitled to relief on the merits because none of Newby's prior convictions involved dishonesty or false statement; thus, trial counsel would not have been permitted to use Newby's prior convictions because Tennessee Rule of Evidence 609 prohibits the use of such offenses to impeach a witness.

Petitioner has failed to cite any clearly established federal law as determined by the United States Supreme Court that is contrary to the appellate court's decision or was unreasonably applied by the Court of Criminal Appeals of Tennessee when it determined Petitioner was not denied his constitutional right to effective assistance of counsel when counsel did not cross-examine Newby about his prior convictions.  The Court of Criminal Appeals of Tennessee's conclusion was neither contrary to nor an unreasonable application of federal law nor was the state court's conclusion an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, this Court will **DISMISS** Petitioner's claim of ineffective assistance of counsel for failing to impeach Newby and will **GRANT** Respondent's motion to dismiss this claim.

### c.    Ineffective Assistance of Counsel/Prosecutorial Misconduct (Petition at ¶ D. Ground 4)

This claim is raised by Petitioner as a prosecutorial misconduct claim or, in the alternative,

---

[13]     Trial counsel testified as follows:

I think the only thing I asked him about was the prior theft, which was dismissed or retired, and then I think basically you started asking about the DUI and the marijuana case to show that you actually prosecuted him, so you were actually in a position of going into more crimes than I really would have been allowed to go into.

(Court File No. 6-4, Addendum No. 2,Vol.2, at 69-70).  In addition, counsel testified it was his understanding Mr. Newby was found not guilty of the DUI and the Judge would not have allowed counsel to question Mr. Newby about the facts and his statements surrounding the DUI arrest. (Court File No. 6-4, Addendum No. 2, Vol. 2, at 70-72).

as an ineffective assistance of counsel claim. Petitioner claims counsel failed to impeach the victim with the various statements she made to the Department of Human Services, the Rape Crisis counselors, and to the jury. However, Petitioner also claims if the state failed to reveal these statements to Petitioner's counsel then such action constitutes prosecutorial misconduct.

The state post-conviction court reached the following conclusion:

> Prosecutorial misconduct is a matter for direct appeal. There was no showing that the State failed to produce or knew about any alleged differing statements contained in the Department of Human Services or rape crisis counselor records. However, as to the overall question of impeaching the victim, there were several contradictory statements made by the victim which came out at trial including a taped and staged recantation. If there was any lack of known inconsistent statements other than the Tennessee Department of Public Health matter discussed at Issue 13 herein, no proof has been presented. However, for argument's sake, the victim's credibility was adequately placed at issue. Whatever these unstated differing statements held by the Department of Human Services or rape crisis counselors were, they would have added little to the credibility attack on the victim. The jury and the Court heard several inconsistent statements, heard the victim's explanation and observed the victim's demeanor. The prejudice prong of <u>Strickland</u> is not met here and there is no Sixth Amendment error.

(Court File No. 6-7, at 4).

The state appellate court concluded Petitioner waived consideration of this issue because he failed to provide references to the record, failed to develop his argument, and failed to cite relevant authorities. Notwithstanding the finding of waiver, the appellate court also concluded Petitioner was not entitled to relief on this claim because he failed to present any statement made by the victim at the evidentiary hearing. There were no witnesses called to corroborate the claim that the victim made inconsistent statements to these various agencies. Trial counsel did cross-examine the victim about certain inconsistent statements she made to her mother and Petitioner's ex-wife about the allegations.

The state post-conviction hearing transcript reflects trial counsel had no knowledge of any

differing statements given to the Department of Human Services' or rape crisis counselors and the jury (Court File No. 6-4, Addendum No. 2, Vol. 2, p. 77). Additionally, there is no evidence in the record before this Court that any such evidence exists. Trial counsel testified each time the victim told the story it changed and he showed the jury the inconsistencies in her statements and appellate co-counsel demonstrated the inconsistencies in her statement during the hearing on the motion for new trial (Court File No. 6-5, Addendum No. 2, Vol. 3, p. 78). A thorough review of the state post-conviction transcript reveals no testimony was introduced regarding these alleged differing statements given to the Department of Human Services' and the rape crisis counselors. Nor has Petitioner introduced any such proof in this habeas proceeding. Petitioner has failed to meet his burden by providing evidence to corroborate the claim that the victim made inconsistent statements to the Department of Human Services and the rape crisis counselors. Accordingly, Petitioner is not entitled to any habeas relief on this claim. The Court will **GRANT** Respondent's motion to dismiss Petitioner's claim regarding the different statements the victim gave to the Department of Human Services and the rape crisis counselor.

### d. *Brady* Claim/Ineffective Assistance Claim (Petition at ¶ M. Ground 13)

Petitioner claims the State committed a *Brady v. Maryland*, 373 U.S. 83 (1963), violation by failing to turn over the victim's Tennessee Department of Health records. Petitioner claims in the alternative, trial counsel was ineffective for failing to discover the records. Specifically, Petitioner claims the state failed to disclose and trial counsel failed to discover a document created by the health department in 1998 wherein the victim reported she had sex for the first time at the age of thirteen. *Bowers v. State*, 2005 WL 1021563, at *9 (Tenn.Crim.App.).

Under *Brady* "suppression by the prosecution of evidence favorable to an accused…violates

due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  In *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) the Supreme Court held  "[t]here are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensured."   The Supreme Court has defined materiality in relation to prosecutorial failure to disclose favorable evidence to the accused as: "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The state appellate court rejected Petitioner's contention of a due process violation under *Brady* and his alternate theory that trial counsel was ineffective for failing to discover the victim's sexual history in the records of the Department of Human Services.  Although trial counsel recalled making a general discovery request in this case, the motion did not appear in the record and there was no evidence reflecting Petitioner specifically requested discovery of the victim's health department records.  First, the appellate court concluded Petitioner was not entitled to the record in question because state law mandated such records be kept confidential except under very specifically limited circumstances pursuant to Tenn. Code Ann. § 37-1-612.  *Bowers v. State*, 2005 WL 1021563, at *9 (Tenn.Crim.App.).  Consequently, because Petitioner would not have been entitled to the record, even if he had requested it, the state did not violate the requirements under *Brady* by failing to disclose the document.  *Id.* at *10.  Likewise, trial counsel was not ineffective for failing

to discover and utilize a document to which he was not entitled.

More importantly, the state appellate court observed the document was created more than a year after the end of Petitioner's trial. Consequently, the state did not violate the *Brady* doctrine by failing to disclose a document which did not exist, just as trial counsel was not ineffective for failing to discover a non-existent document.

Assuming for the sake of argument the document did exist and the Petitioner was entitled to it, the state appellate court concluded no *Brady* violation occurred because the Petitioner failed to establish the document was exculpatory, explaining as follows:

> In the document, which appears to be a questionnaire created by the health department for patients seeking family planning advice, the victim lists the age at which she first had sex as thirteen. Within the same form, however, the victim indicates that she had previously been sexually abused. In our view, the victim's statement that she first had sexual intercourse at age thirteen does not necessarily contradict her claim that she was raped by the petitioner at an earlier age. In consequence, the petitioner is not entitled to relief on this issue.

*Id.* at 10.

The Court reviews the last state court decision on the merits, which in this case is the decision of the Court of Criminal Appeals of Tennessee. Factual findings made by the state court are presumed correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254 (e)(1). The application of federal law is unreasonable when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the principle to the facts of the prisoner's case. When assessing unreasonableness, this Court may not issue the writ simply because it concludes in its independent judgment the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the Court must conclude the application of clearly-established federal law was also unreasonable. *Williams v.*

*Taylor,* 529 U.S. 362, 396-98 (2000).  Under § 2254(d)(1) a state court decision is contrary to clearly-established federal law if "the state court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.

The record supports the state court's conclusions.  Petitioner was tried in 1997 and the record from the Department of Health was made on February 23, 1998 [Addendum No. 2, Vol. 2, p 58]. The record before the Court reflects  the document contained a question asking the victim's age the first time she had sex [Addendum No. 2, Vol. 2, p. 57].  On direct examination trial counsel testified he believed the record could have been used to support the motion for new trial for impeachment purposes.   However, on cross-examination he admitted he did not know the context under which the statement that she was thirteen years old the first time she had sex was made nor whether that response was referring to consensual sex or having been raped [Addendum No. 2, Vol. 2, p. 58]. In addition, the transcript from the state post-conviction hearing reflects that on the same document the victim referred to being sexually and physically abused at a young age.  When questioned about the admission of abuse also being on the document, trial counsel conceded the record may or may not have helped Petitioner at his motion for new trial [Addendum No. 2, Vol. 2, p 59-60].

A thorough review of the state court record and the state court's decision persuades this Court  the state court's  result does not contravene or unreasonably apply clearly established federal law nor is the state court decision based on an unreasonable determination of the facts in light of the evidence presented.  The state appellate court reasonably applied *Brady* and *Strickland* to the facts of  Petitioner's  claim  and  the  state  court's  factual  findings  were  supported  by  the  record. Accordingly,  Petitioner  has  not  demonstrated  he  is  entitled  to  habeas  relief  on  his  *Brady*  or

*Strickland* claim and he will be denied habeas relief on this claim. The Corut will **GRANT** the State's motion to dismiss this claim.

## V. <u>CONCLUSION</u>

The Court will **GRANT** Respondent's motion to dismiss and for judgment as a matter of law (Court File No. 4) as to all claims. Petitioner is not entitled to an evidentiary hearing and the Court will **DISMISS** his § 2254 petition (Court File No. 1).

A judgment will enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**